UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-66-F

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY )<br>COMMISSION, )<br>      Plaintiff, )<br>       )<br>and )<br>       )<br>MACHELLE ALLISON, )<br>      Plaintiff-Intervenor, )<br>      vs. )<br>       )<br>TJX COMPANIES, INC. d/b/a )<br>MARSHALLS, )<br>      Defendant. ) | ORDER |

This matter is before the court on Defendant's Motion for Summary Judgment Against the EEOC's Claim Brought on Behalf of Shauntel Boyd [DE-27] and Motion for Summary Judgment Against Intervenor Machelle Allison's Claims, and the EEOC's Claim On Her Behalf [DE-28]. The motions have been fully briefed, and are therefore ripe for ruling.

## I. STATEMENT OF THE CASE

On April 19, 2007, the Equal Employment Opportunity Commission ("EEOC") filed a complaint under 42 U.S.C. § 2000e *et seq.* ("Title VII) alleging that Defendant TJX Companies, Inc. d/b/a Marshalls ("Marshalls")[1] discriminated against Shauntel Boyd ("Boyd") and Machelle Allison ("Allison") and other similarly situated female employees by subjecting them to a sexually hostile work environment.[2]

---

[1] Defendant indicates that it has been improperly denominated, and the proper entity is Marshalls of MA, Inc.

[2] The parties indicate that the EEOC has since informed Marshalls that it is not seeking relief for any other individuals other than Boyd or Allison.

On July 27, 2007, Allison filed a Motion to Intervene, which was allowed by the court on August 7, 2007. Allison's complaint in intervention alleges claims under Title VII for sexual harassment, retaliation, and sex discrimination, and under North Carolina law for intentional infliction of emotional distress, negligent hiring, retention and supervision, and negligent infliction for emotional distress. Marshalls now moves for summary judgment as to all claims.

## II. STATEMENT OF THE FACTS

The relevant facts, stated in the light most favorable to the non-movants, are as follows:

### A. Marshalls

Marshalls is an off-price retailer of family apparel and home fashion. Marshalls operates retail establishments in numerous states, including North Carolina. The store at issue in this dispute is located in Jacksonville, North Carolina.

During the relevant timeframe, the Jacksonville store was managed by Store Manager Kawana Gibson, who reported to District Manager Patti Whitmire. During the relevant timeframe, Whitmire came to visit Jacksonville store approximately seven times. The Assistant Store Managers were Tonya Lyons and Amanda D'Amia.

### B. Boyd's Interaction with Haywood Johnson

Marshalls hired Boyd as a Sales Associate in the Jacksonville store on August 13, 2003. She initially worked in the Junior and Ladies Departments, but was transferred to the Men's Department in the fall of 2004.

According to Boyd, from December 2004 to February 2005, Haywood Johnson, the coordinator for the Men's Department, made numerous sexually inappropriate comments to her, subjected her to inappropriate touching, and targeted her with threatening conduct. Specifically,

2

Boyd claims that Johnson told her it appeared she had two midgets in her butt. She also asserts that Johnson attempted to lift her blouse, but she slapped his hand away. On another occasion, Boyd asserts that Johnson intentionally bumped into her and touched her behind. Boyd also learned that Johnson told a co-worker that he wanted to see Boyd and her husband in a sex act, and that he told a customer that he and Boyd were married. Another Marshall's employee, Phyllis Smith, witnessed Johnson try to lift Boyd's blouse, and overhead several times Johnson making comments about the size of Boyd's rear end and his desire to grab it.

Boyd also believes that Johnson targeted her with physically threatening behavior because she did not welcome his conduct. Specifically, Boyd remembers Johnson approaching her in the stockroom while he was very upset, swinging his arms, and cursing at her. One day, Johnson, for no reason, hit Boyd with a belt twice. Another time, in Boyd's presence, Johnson slammed the phone receiver down and told Gibson he was going to hit Boyd. He also intentionally threw boxes at Boyd.

Boyd asserts that she witnessed Johnson make inappropriate comments to co-workers and engage in other sexual conduct. She contends that she saw Johnson grab Allison in the break room and heard Allison's pleas to him to let her go. Boyd also overheard Johnson tell Allison that she needed to clean her "coochie cobwebs out," and that her hands smelled like a "dick." Notice of Corrected Filing [DE-32], Dep. of Boyd at pp. 343, 346-47.

## C. Allison's interaction with Haywood Johnson

Marshalls hired Allison as a cashier in the King of Prussia, Pennsylvania, store on October 16, 2001. Allison transferred into the Jacksonville store as a sales associate on April 1, 2004.

Allison asserts that she had frequent interaction with Johnson from November 2004 through

3

February 2005. Allison testified that Johnson made sexual comments at least once each day that she worked with him. On one occasion, Johnson told Allison to "clean the cobwebs out [from her pussy]." Mot. for Summ. J. on Allison's Claims [DE-28], Ex. 3 Dep. of Machelle Allison at p. 320. He also stated in her presence that his hands "smelled like dick." *Id.* at pp. 321. On another occasion, he asked Allison to give him a hug. Johnson told Allison that her breasts were "big and round and juicy," and another time, told her that her "ass is nice." *Id.* at pp. 326, 328. Allison contends that Johnson asked to touch her breasts several times. She also contends that she heard Johnson make comments about other employees' breasts at least once a day.

In addition to comments, Allison also contends that Johnson subjected her to unwanted touching. She asserts that one occasion, Johnson came towards her with his two hands in attempt to grab her breasts, but she moved out of the way. During another incident in the breakroom, Johnson grabbed Allison from the front as she crossed her arms in front of her to protect her chest. Johnson then put his hands all the way around her, and held her tight, saying, "Now I've got you." *Id.* at p. 127. Allison contends she tried to break free from his grasp, but was unable to do so. She testified that Johnson finally released her when Boyd walked into the breakroom.

Like Boyd, Allison also contends that Johnson made inappropriate comments about coworkers to her. For example, he told Allison he wished he "could be a fly on the wall so [he] could watch [Boyd] have sex with her husband." *Id.* at pp. 163-64. She also contends that while in the stockroom, Johnson told her and other employees that they should look at how large Boyd's behind was, and stated he wanted to touch it. Johnson also commented to Allison on a separate occasion that Boyd's shape looked like "an hour glass" or "bottle." Allison also witnessed Johnson smack a female associate on the behind, and saw him throw a box at Boyd.

4

Allison testified that she did not like working with Johnson and did her best to avoid him.

## D. Sexual Harassment Policy and complaints

Both Boyd and Allison were aware that Marshalls had a sexual harassment policy. Marshalls' Sexual Harassment policy is contained in the Code of Conduct book, which is released annually to employees sometime in July. The 2004 Code of Conduct states: "If you believe that you or a fellow Associate has been harassed or treated unfairly, immediately notify your Supervisor, a member of Management, and/or an Association Relations/Human Resources representative." EEOC Resp. [DE-31], 2004 Code of Conduct at p. 6.

Boyd and Allison complained to both Gibson and Lyons about Johnson's conduct numerous times, beginning in November 2004. Gibson maintains that she immediately reported the complaints of Boyd and Allison to her supervisor, District Manager Patti Whitmire. Gibson contends that Whitmire told her she had to be a witness to the sexual harassment, and instructed Gibson to verbally counsel Johnson and document everything that occurred for a thirty-day period. Gibson testified that she did verbally caution Johnson, and his reaction was so strong, she became afraid of him. Lyons, in response to Allison's complaint, also verbally counseled Johnson.

Gibson continued to received complaints about Johnson, and ultimately determined that he should be fired. She maintains that she had no authority to fire him, and needed Whitmire's approval. She contends that Whitmire rejected her recommendations to fire Johnson.

Marshalls eventually fired Johnson on May 16, 2005, after a customer complained that Johnson told her that "her ass looked good in jeans." EEOC Resp. [DE-31], Ex. 5 Dep. of Kawana Gibson at p. 123.

5

### E. Boyd and Allison file charges with EEOC

On May 4, 2005, Boyd and Allison both filed a charge with the EEOC, alleging that they had been sexually harassed by Johnson.

### F. Allison's employment post-EEOC complaint

In April 2006, Marshalls promoted Allison to Coordinator of the Ladies Area and increased her pay from $7.25 per hour to $8.25 per hour. In July 2006, Allison met with new Store Manager Sharon Reese and Assistant Merchandise Manager Shayla Germain, who gave her a list of their expectations for her job as Coordinator. Reese told Allison she was giving her the expectations for her job because she wanted to make sure Allison understood her job expectations.

Marshalls represents that beginning in August 2006 and through December 2006, Allison failed to perform her job duties as coordinator on a number of occasions, and was insubordinate to Germain. On March 16, 2007, Allison refused to obey Germain's explicit instruction to get all of the "basics" out on the sales floor. Marshalls indicates that Allison told Germain this was not going to happen, and repeatedly told Germain to "just give me my pink slip." Mot. for Summ. J. on Allison's Claims [DE-27], Dep. of Germain at p. 70.

Three days later, on March 19, 2007, Allison left the building for lunch while a truck was being unloaded. Marshalls represents that Allison did not return when asked by Germain to do so, and that this was against the standard practices in the store. Consequently, on March 20, 2007, Marshalls terminated Allison for insubordination. She was replaced by a female, Elizabeth Hills.

6

*Celotex*, 477 U.S. at 322-23. Thus, the moving party may meet its burden as to an issue for which the non-movant will bear the burden of proof at trial by demonstrating that there is a lack of evidence to support the non-moving party's case. *Id.* at 325.

Furthermore, the proper standard for summary judgment mirrors that for directing a verdict under Rule 50(a) of the Federal Rules of Civil Procedure, whereby the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson*, 477 U.S. at 250. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' " *Id.* at 252 (internal citations omitted).

## B. Sexual harassment claim

Marshalls contends it is entitled to summary judgment on the claims for sexual harassment by the EEOC and Allison.

The Fourth Circuit repeatedly has explained that:

> Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to [her] . . . terms, conditions or benefits of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). . . . Title VII is violated "[w]hen the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending contact (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer. *Spicer v. Va. Dept. of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995)(en banc) . . . .

*Ocholtree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003)(en banc)(citation and quotation omissions in original). In the instant case, Marshalls contends there is insufficient

8

evidence as a matter of law as to the third element: the severity and pervasiveness of the offending conduct.

As noted above, the third requirement of a Title VII hostile work environment claim is proof that the harassment is "sufficiently severe and pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)(internal quotation marks omitted and alteration in original). This "severe and pervasive" element has both subjective and objective components. *Harris*, 510 U.S. at 22. In the instant case, Marshalls does not appear to argue that either Boyd or Allison failed to regard their work environment as hostile. Rather, Marshalls argues that the record cannot support a finding that the alleged conduct was objectively severe and pervasive.

When assessing whether a jury could find that a work environment was objectively abusive, the Supreme Court has instructed that "the objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 81 (1998)(quoting *Harris v. Forklift Sys.*, 510 U.C. 17, 23 (1993)). Those circumstances include "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Moreover, such an analysis requires "careful consideration of the social context" in which the alleged discrimination occurred. *Oncale*, 523 U.S. at 81. As the Supreme Court has explained, the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code . . . . Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplaces, such as sporadic use of abusive

9

language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 755, 787 (1998)(internal quotations and citations omitted).

In this case, Marshalls argues the facts of this case are analogous to the facts in *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) and *Singleton v. Dept. of Correctional Educ.*, 115 Fed. Appx. 119, 123 (4th Cir. 2004), both cases where the Fourth Circuit determined there was insufficient evidence to support the "severe and pervasive" element. In *Hartsell*, the female plaintiff's male coworkers made the following four comments over a three month period: (1) the statement " 'We've made every female in this office cry like a baby;' " (2) asking the plaintiff "whether she would be a "min van driving mommy' or 'be a salesperson and play with the big boys;' "(3) a co-worker, upon seeing a "buxom" woman in company magazine, asking " 'Why don't we have sales assistants that look like that, ' "and (4) a statement that the plaintiff should go home to "fetch [her] husband's slippers like a good little wife." 123 F.3d at 768-773. The Fourth Circuit concluded that the four comments, taken as whole, could not satisfy the third element of a hostile work environment claim. Notably, the Fourth Circuit observed that "[t]here is no allegation that [the plaintiff] was inappropriately touched, propositioned, flirted with, taunted, or even ogled" and that "[n]one of the alleged comments were even vulgar, much less obscene." *Id.* at 773.

Similarly, in *Singleton* the Fourth Circuit found the evidence to be insufficient as to the severe and pervasive element where the record showed that the alleged harasser told another coworker, in plaintiff's presence, that he would spank plaintiff every day; insistently complimented her; stared at her breasts when he spoke to her; once measured the length of her skirt to judge its compliance with the prison's dress code and told her it looked "real good;" constantly told her how attractive he found her; made reference to his own physical fitness, and repeatedly remarked to the

10

plaintiff that if had a wife as attractive as her, he would not allow her to work in a prison facility with inmates. 115 Fed. Appx. at 120. Again, the Fourth Circuit noted what the alleged harasser did *not* do: he never "requested a sexual act, touched her inappropriately, discussed sexual subjects, showed her obscene materials, told her vulgar jokes, or threatened her." *Id.* at 122.

In the instant case, however, the facts reveal conduct the Fourth Circuit found lacking in *Hartsell* and *Singleton*. Indeed, in contrast to *Hartsell*, there are allegations, and supporting record evidence, that Boyd and Allison were "inappropriately touched, propositioned, flirted with, taunted, [and/or] ogled" and they were subjected comments that were vulgar and obscene. *Cf. Hartsell*, 123 F.3d at 773 (finding it significant that plaintiff did not allege she was "inappropriately touched, propositioned, flirted with, taunted, or even ogled"). Both Boyd and Allison testify that Johnson inappropriately touched them, made vulgar remarks to them, and made sexual comments to them. Moreover, in contrast to *Singleton*, Johnson requested to touch Allison's breasts, made comments about wanting to touch Boyd's behind, and made comments almost everyday about coworkers' breasts. *Cf. Singleton*, 115 Fed. Appx. at 122. Unlike Marshalls, the court does not find the conduct in this case to be comparable to the behavior alleged in *Hartsell* or *Singleton*. The court concludes that the EEOC and Allison have come forward with evidence from which a reasonable jury could find that Boyd and Allison were subjected to severe and pervasive harassment.

### C. *Ellerth/Farragher* Defense

Marshalls also argues that the sexual harassment claim is subject to the affirmative defense articulated in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 724 (1998). The *Faragher/Ellerth* defense "allows an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no tangible employment action was

taken against the employee." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001). Marshalls contends that the EEOC and Allison allege that Johnson was a supervisor, and therefore it is entitled to assert the *Faragher/Ellerth* defense. Marshalls is mistaken.

In determining whether one is a coworker or a supervisor for purposes of Title VII, the Fourth Circuit has explained: "The most powerful indication of supervisory status is the ability 'to take tangible employment actions against the victim, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." ' " *Howard v. Winter*, 446 F.3d 559, 566 (4th Cir. 2006)(quoting *Mikels v. City of Durham*, 183 F.3d 323, 333 (4th Cir. 1999)(quoting *Ellerth*, 524 U.S. at 761)). *See also Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004)(explaining that a supervisor has been defined, in the context of sexual harassment liability, as "someone with the power to *directly* affect the terms and conditions of the plaintiff's employment" and "merely having authority to oversee aspects of another employee's job performance does not qualify [one] as a supervisor in the Title VII context"). Thus, to qualify as a "supervisor" for Title VII purposes, there must be evidence in the record showing that Johnson had the ability to affect directly the terms and conditions of the employment of Boyd and Allison.

In this case, Marshalls cites to the unverified complaints filed by the EEOC and Allison, wherein the EEOC and Allison allege that Johnson was a supervisor. *See* Compl. [DE-1] ¶ 7; Intervenor Compl. [DE-9] ¶ 17. The unverified complaints, of course, are not evidence. The only evidence Marshalls cites to is the deposition testimony of Boyd. In response to the question of how, as a supervisor, Johnson supervised her, Boyd answered: "He was supposed to make sure that I was doing my job, that I was over there putting the merchandise out where it was supposed to be, that

12

I was getting the merchandise from the stockroom, and bringing it to the floor where it was supposed to go, things of that nature." Notice of Corrected Filing [DE-32], Dep. of Boyd at p. 184. When asked what authority Johnson had over her, Boyd explained: "You know, he had the authority to recommend something [that] could happen to somebody." *Id.* at p. 185. This does not suggest that Johnson had the authority to take tangible employment actions against either Boyd or Allison, *see Howard*, 446 F.3d at 566, and Marshalls points to no other record evidence to support their assertion he was a supervisor. Without such evidence in the record, Marshalls cannot rely on the *Ellerth/Faragher* defense, and the motions for summary judgment as to the sexual harassment claims are DENIED.

### D. Allison's Claims

In her Intervenor Complaint, Allison alleges a number of additional claims. Marshalls has moved for summary judgment as to each claim.

#### 1. Retaliation

Allison alleges in her complaint that Marshalls also violated Title VII by retaliating against her by: (1) failing to investigate her intra-company complaints of sexual harassment in late 2004 and thereafter; (2) "failing to discipline, warn, provide counseling for, or terminate Johnson after [Marshalls] knew or should have known of . . . [Allison's] express complaints;" (3) not paying overtime to Allison, "shorting hours," "making false claims of insubordination," and then terminating her; and (4) "failing to advance her or pay her as she was entitled after she made complaints to management about Johnson's harassing behavior." Intervenor Compl. [DE-9] ¶ 40. Marshalls moves for summary judgment as to all of Allison's theories for her retaliation claim. Allison, in her response to Marshalls' motion, focuses only upon her termination from employment.

13

Accordingly, the court deems the remaining theories for her retaliation claim to be waived. *See Brand v. North Carolina Dept. of Crime Control and Public Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004)(noting that where a plaintiff fails to respond to a defendant's arguments regarding a hostile work environment claim, plaintiff concedes he has not stated a claim).

To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, she suffered an adverse employment action, and that there was a causal connection between the adverse employment action and her protected activity. *King v. Rumsfeld* 328 F.3d 145, 150-51 (4th Cir. 2003). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to rebut the presumption of retaliation by articulating a legitimate non-discriminatory reason for its actions. *Id.* at 151. If the employer can proffer a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for retaliation. *Id.*

Based on the record, there can be no serious dispute that Allison suffered an adverse employment action. *Id.* (noting that termination of employment "indisputedly constituted [an] adverse employment action"). Furthermore, there is no dispute that Allison engaged in protected activity in 2004 and 2005 by filing two charges with the EEOC. There is a dispute, however, as to whether there is a causal connection between Allison's protected activity and her subsequent termination.

Specifically, Marshalls notes that two or more years passed between Allison's protected activity, in 2004 and 2005, and her subsequent termination in March 2007. Marshalls also contends that Allison received a promotion and pay raise in April 2006, which negates any inference of a causal connection between her protected activity and her termination. The court agrees. The Four

14

Circuit has observed that "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)(observing that a time span of three years between the protected activity and the adverse employment action negated any inference of a causal connection). Similarly, in *Causey v. Balog*, 162 F.3d 795 (4th Cir. 1998), the Fourth Circuit determined that a "thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation." *Id.* at 803. Here, there is a gap of almost two years, and Allison has not proffered any other evidence of retaliation, other than her unsupported theory that Marshalls engaged "in a brilliant, but, apparent plan to terminate" her. Resp. [DE-35] at p. 7. Moreover, the fact that Marshalls, in the intervening time period between Allison's protected activity and her termination, actually promoted her also negates the inference of discrimination. *Cf. Moticka v. Weck Closure Systems*, 183 F.3d Appx. 343, 353 (4th Cir. 2006)(explaining that where an employer gave an employee favorable treatment after the employee engaged in protected activity, "the inference of retaliatory motive is undercut" and plaintiff failed to make out a prima facie case of retaliation). Because Allison has failed to establish a prima facie case of retaliation, Marshall's motion for summary judgment is ALLOWED as to that claim.

**2. Sex Discrimination**

Allison also alleges that Marshalls violated Title VII when it "denied her certain privileges, benefits and treatment given to male employees" and terminated her from employment, all on the basis of her sex. Intervenor Compl. [DE-9] ¶¶ 41-47. Marshalls moves for summary judgment on Allison's sex discrimination claim, contending (1) she failed to exhaust her administrative remedies

prior to filing suit, and (2) she has no evidence that Marshalls' reasons for any actions she complains of are pretext for sex discrimination. Allison, in response to the Marshall's motion for summary judgment, makes no mention of her sex discrimination claim. Again, the court considers this claim to be abandoned.

### 3. Emotional Distress Claims

Allison also alleges that Marshalls is liable for her claims for negligent and intentional infliction of emotional distress. In order to state a claim for either negligent infliction of emotional distress or intentional infliction of emotional distress, a plaintiff must establish, *inter alia*, that the negligent or intentional conduct in fact caused her "severe emotional distress." *Johnson v. Ruark Obstetrics & Gyn. Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)(stating the elements for a claim for negligent infliction of emotional distress). *See also Smith-Price v. Charter Behavioral Health* Systems, 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004). In this case, Marshalls asserts that Allison has failed to proffer any evidence of "severe emotional distress."

North Carolina Supreme Court has stated that "the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition where may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83 414 S.E.2d 22, 27 (1992)(quoting *Johnson*, 327 N.C. at 302, 395 S.E.2d at 97)(emphasis in original). Although proof in the form of medical evidence of testimony is not necessarily required, a plaintiff must still produce evidence of "severe and disabling" psychological problems. *See Coffman v. Roberson*, 153 N.C. App. 618, 627-28, 571 S.E.2d 255, 261 (2002)("[P]roof of severe emotional distress does not require medical expert testimony."). *See also Waddle*, 331 N.C. at 85,

16

83 414 S.E.2d at 28(concluding that plaintiff had failed to forecast sufficient evidence of the "severe emotional distress" element where there was no evidence any medical documentation of plaintiff's alleged "severe emotional distress" nor any other evidence of "severe and disabling" psychological problems).

Marshalls contends Allison stated in discovery: " ' I have not seen any physicians, psychiatrists, psychologists for emotional, mental illness conditions, impairments or disability. No course of treatment provided by anyone. Just deal with hardship, heartache, and pain from others.' " Mem. in Support of Mot. for Summ. J. [DE-28] at p. 28 (citing "Ex. 2, Allison Rog. Answer No. 5 at 7").[3] Marshalls contends that such evidence is insufficient under North Carolina precedent. Allison, in her response, says only "Plaintiff states over and over again that Defendant's actions caused severe emotional distress." Resp. [DE-35] at p. 7. It is not this court's burden to comb through the record to identify supporting evidence for Allison. In light of her failure to come forward with any evidence to show that she suffered from "severe emotional distress" within the meaning of North Carolina law, Marshalls' motion for summary judgment is ALLOWED as to Allison's claims for negligent infliction of emotional distress and intentional infliction of emotional distress.

### 4. Negligent hiring, supervision, retention

Finally, Allison alleges that Marshalls is liable for the negligent hiring, retention, and supervision of Johnson. To establish a claim for negligent hiring under North Carolina law, a plaintiff must show: "(1) a specific tortious act by the employee; (2) the employee's incompetence

---

[3] The court uses the word "contends" because the court is unable to locate the above-quoted language within Exhibit 2 to Marshall's motion for summary judgment [DE-28].

or unfitness; (3) the employer's actual or constructive notice of the employee's incompetency or unfitness; and (4) injury resulting from the employee's incompetence or unfitness." *White v. Consol. Planning, Inc.*, 166 N.c. App. 283, 292, 603 S.E.2d 147, 154 (2004). Similarly, to establish a claim for negligent retention or supervision, "the plaintiff must prove that 'the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency.'" *Smith v. Privette*, 128 N.C. App. 490, 494-95, 495 S.E.2d 395, 398 (1998)(quoting *Graham v. Hardee's Food Sys.*, 121 N.C. App. 382, 384, 465 S.E.2d 558, 560 (1996)). Consequently, to establish a claim for either negligent hiring or negligent supervision/retention, the plaintiff must prove that the employee committed a tortious act against her.

Marshalls predicated its motion for summary judgment on these claims on the assumption that Allison's other tort claims and Title VII claims would fail as a matter of law. Mem. in Support of Mot. for Summ. J. on Allison's Claims [DE-28] at p. 28 ("[A]s set out herein, Allison's underlying tort claims and Title VII claims fail as a matter of law; thus . . . her claims against Marshalls for negligent hiring, supervision and retention must also fail on summary judgment."). Allison's Title VII sexual harassment claim, however, has not failed as a matter of law. Marshalls has not suggested that the Title VII sexual harassment claim cannot serve as the "tortious act" needed to establish a negligent hiring or supervision claim, *see Efird v. Riley*, 342 F.Supp. 2d 413, 430 (M.D.N.C. 2004), and therefore the motion for summary judgment is DENIED as to Allison's claims for negligent hiring and negligent supervision/retention.

## IV. CONCLUSION

For the foregoing reasons, Marshalls' Motion for Summary Judgment Against the EEOC's

Claim Brought on Behalf of Shauntel Boyd [DE-27] is DENIED. Marshalls' Motion for Summary Judgment Against Intervenor Machelle Allison's Claims, and the EEOC's Claim On Her Behalf [DE-28] is ALLOWED in part and DENIED in part. As to the Title VII sexual harassment claim asserted by the EEOC and Allison, and the negligent hiring and negligent supervision/retention claim asserted by Allison, the motion is DENIED. As to all other claims, the motion is ALLOWED. The Clerk of Court is DIRECTED to continue the management of this case.

SO ORDERED. This the 22 day of January, 2009.

*James C. Fox*
James C. Fox
Senior United States District Judge